Stacie D. Yee (State Bar # 223544)
stacie.yee@squiresanders.com
Squire Sanders (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, CA  90071
Telephone: +1 213 624 2500
Facsimile:  +1 213 623 4581

Attorneys for Plaintiff
DEREK K. SMART

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Derek K. Smart, a married man<br><br>Plaintiff,<br><br>vs.<br><br>Willis Huffman, a single man,<br><br>Defendant. | Case No.  **'13CV0022 GPC KSC**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>**(1) DEFAMATION**<br><br>**(2) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>**(3) INTRUSION ON SECLUSION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Derek K. Smart ("Smart"), by and through his undersigned attorneys, for his Complaint against Defendant Willis Huffman ("Huffman"), alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Smart is a married man who is domiciled and residing in the State of Florida.

2.      Upon information and belief, Huffman is a single man domiciled and residing in San Diego, California.

3.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, because Smart and Huffman are citizens of different States and the matter in controversy exceeds the sum or value of $75,000.

4.      Venue is proper in this Court because Huffman is a resident of this judicial district, and because a substantial part of the events or omissions giving rise to Smart's claims occurred in this judicial district.

**GENERAL ALLEGATIONS**

5.      Smart is the President, Lead Developer, and Chief Technical Officer for 3000AD, Inc., a business incorporated in and having its principal place of business in Florida.

6.      Smart develops, and consults on the development of, interactive computer games.

7.      The computer games that Smart has developed, or consulted on the development of, include Battlecruiser 3000AD, Battlecruiser Millennium, Universal Combat, and All Aspect Warfare.

8.      Smart also is President of, and an investor in, Quest Online, LLC, an Arizona limited liability company that develops and publishes a massive multiplayer online role playing game.

9.      Huffman is a manager of the systems utilities group at Teradata, a software company located in Rancho Bernardo, California.

10.     In addition to working at Teradata, since at least January 2010, Huffman continuously has published and hosted a website, http://www.flamewarfollies.com (the "Website"), which is publicly accessible to Internet users via the World Wide Web.

11.     As publisher of the Website, Huffman is solely, or principally, responsible for the content published on the Website.  He has posted new content to the Website within the last twelve months, including, without limitation, on or about May 28, 2012,

and has permitted content originally published more than one year ago to remain on the Website.

12. The Website is accessible by any person directing his or her web browser to the Website. In other words, there is no membership or log-in access code required to access the content, and no fee for browsing the material on the Website.

13. Huffman's Website is devoted in its entirety to discussing Smart. In fact, Huffman is, according to the Website, a self-described "Derekologist."

14. The main page of the Website states that "Derek Smart (author of the computer game BC3K) is the center of it all." Above that verbiage is an animated graphic of flames. Smart's image appears inside the animated flames, with his computer-generated image exploding approximately every four seconds, with the words "OW! THAT SMARTS! (FU Derek!)" appearing after the animated explosion.

15. There are numerous web pages accessible via the Website that discuss Smart by name.

16. For example, from the main page, users can click a link entitled "A real introduction to what this is all about." Doing so takes the user to a webpage (http://flamewarfollies.com/archives/1About/WhatIsFlameWarAbout.html) entitled "What Are the Flame War Follies About?" (the "About" page).

17. Huffman makes numerous false, negative and disparaging statements about Smart's purported character, reputation, honesty, education, propensity for violence, business skills, and expertise on the About page. These include, without limitation:

   a) "One interesting thing discovered in 2010 is that Mr. Smart has about a half dozen open warrants for his arrest in North Carolina … They are for damaging property, apparently threatening a female, assault against a female, and multiple warrants for passing worthless checks."

   b) "In 2010, … Mr. Smart … participates in the apparently illegal takeover of someone else's job and then apparently lies publicly about the whole thing."

   c) "Mr. Smart is very fond of telling lies[.]"

d)  "Derek Smart has shown both a lack of judgment and lack of honesty by claiming that he earned a Ph.D. in Computer Science from a renowned and accredited university."

e)  "I think that it's obvious that … [Smart] doesn't even have a bachelor degree let alone the Ph.D. that he claims[.]"

f)  "The Computer Gaming World magazine has poked fun at Derek [Smart] a few times for an alleged incident where he beat up a Coke machine."

18.     Huffman makes further false, negative, and disparaging comments about Smart's character and reputation on other pages within the Website.

19.     For example, Huffman publishes a page on his Website (http://flamewarfollies.com/policeRecords.htm) entitled "Public Court Records for Derek Smart."  The webpage is accessible from the main webpage of the Website through a link entitled, "FLASH! Derek Smart is wanted in North Carolina! (I don't mean the good kind of "wanted".)" (the "Wanted" page).

20.     Huffman lists nine alleged crimes on the Wanted web page, all of which he claims were committed by Smart.  These alleged crimes range from assault and battery to communicating threats to passing worthless checks.

21.     Many of Smart's alleged "crimes," as described on the Wanted webpage, refer to 20-year old arrest records, none of which were prosecuted, while others refer to charges (including for battery) resulting in acquittal.

22.     In addition, on the Wanted webpage, Huffman states that, "if Mr. Smart were to be stopped in North Carolina by the police then he might be taken to jail for" certain "outstanding warrants," implying that Smart has evaded prosecution related to certain charges and will almost certainly face jail time therefor if he ever enters North Carolina.

23.     Another link on the main webpage, entitled "History of Derek Smart's Ph.D. Fraud," takes users to a webpage (http://flamewarfollies.com/PhDFraud/) (the

"Fraud" webpage) with links to various documents that Huffman has assembled and published over the last 15 years as a part of a campaign to "expose" Smart as a purported academic fraud.

24.    For example, on the Fraud webpage, Huffman accuses Smart of "play[ing] fast and loose with the truth," and disparages Smart's educational record and character for truthfulness with claims such as:

    a)  "Mr. Smart purchased what amounts to a novelty diploma, a worthless piece of paper and just started claiming he had a PhD;"

    b)  "Derek Smart is in fact an academic fraud;"

    c)  "That Mr. Derek Smart is an academic fraud seems to be an inescapable conclusion on many different levels;"

    d)  "Derek … is a complete academic fraud;"

    e)  "Derek Smart is a habitual liar;"

    f)  "Derek Smart could be a pathological liar and just doesn't appreciate the magnitude of his deceit nor how obvious his fraud is."

    g)  "There's a law in Florida and I assume in many other places that says it is illegal to claim a PhD that hasn't been earned … Mr. Smart apparently violates this every time he claims to have a PhD."

25.    Throughout the Website, Huffman makes many other incendiary accusations about Smart, including, as examples, accusing Smart of "forg[ing a] racist e-mail;" describing Smart as a "megalomania[c];" announcing that Smart has a "penchant to lie;" accusing Smart of "weasel[ing] his way into an actual company;" and stating that Smart "is … untruthful even in his business dealings."

26.    The Website also discusses matters of public record related to Smart, but the widespread public disclosure of which are intended to embarrass Smart and expose him to ridicule.   These include, without limitation, detailed discussions of Smart's personal bankruptcy filing, incendiary comments about the dissolution of Smart's marriage, and postings about an investigation into Smart's purported "PhD fraud" by the

Broward County Sheriff's Office after law enforcement received a tip from one of Huffman's friends, David Allen.

27.     The Webpage also contains postings designed to ridicule Smart's racial identity (Black), including taunting Smart about his "tribe."

28.     In an effort to negatively impact Smart's and 3000AD, Inc.'s business operations, the Website links from its main webpage, in a link entitled "Prepare to Worship the Taco Supreme Commander," to the official business website of 3000AD, Inc. (http://www.bc3000ad.com/).

29.     Upon information and belief, Huffman's intent in linking the Webpage to the 3000AD, Inc. official website was to confuse and mislead Smart's customers and investors, and other gaming professionals.

30.     The Webpage also links, through a link entitled "Prepare to Laugh at the Supreme Commander Parody," to a website (http://3000bc.0catch.com/) (the "Batalcruzer" website), which, upon information and belief, Huffman intended to confuse Internet users into believing to be the official website of 3000AD, Inc.

31.     Once on the Batalcruzer (a misspelling of, and obvious play on, Battlecruiser, Smart's first commercial game) website, Internet users are led to believe that they are viewing a website that Smart developed to discuss, promote, or advertise one of his games.   However, the Batalcruzer website, which purports to be part of the "Gaycom Network," disparages the Battlecruiser games and their players, and insinuates, among other things, that Smart takes a prescription drug used to treat certain behavioral health conditions.

32.     Huffman admits on the Website that the appearance of Smart's having engaged in improper conduct, such as alleged "PhD fraud," has had, or likely will have, a negative effect on Smart's personal and business interests.   For example, on the Fraud webpage, Huffman writes:

> Mr. Smart's PhD fraud has probably hurt his career.   Derek
> and his lawyer claimed that it had hurt his career by hurting

his relationships and potential relationships with both publishers and customers. This was back when this web site counter only had about 100 hits. Derek would apparently like nothing better than to find a software publisher to back him for the development of a sequel to his BC3K game. I imagine that the exposure of his PhD fraud would have to hurt his chances at successfully finding and negotiating any deal.

33.     The information that Huffman has published on the Website is, by and large, false information about and concerning Smart.

34.     Upon information and belief, Huffman published and continues to host the Website knowing that most of the information posted about Smart is false, or he has done so with reckless disregard for the truth of the information posted.

35.     Huffman's false and defamatory publications about Smart have been intended to cause, and have in fact caused, damage to Smart.

36.     Moreover, much of Huffman's Website accuses Smart of unlawful conduct, or conduct, characteristics, and/or conditions incompatible with the proper exercise of a lawful business, rendering such statements defamation *per se*.

37.     Huffman's publication and hosting of the Website is not protected by any privilege or for any legitimate business purpose. To the contrary, Huffman publishes and hosts the Website to embarrass, hurt, injure, defame, and damage Smart. Indeed, Huffman has remarked in communications to third parties that he finds it "amusing" when Internet users ridicule Smart about the Website.

## FIRST CLAIM FOR RELIEF
### Defamation

38.     Smart incorporates by reference all prior Paragraphs of this Complaint.

39.     Huffman has published, and, by virtue of his continued hosting of the Website, continues to publish false, defamatory, and unprivileged statements about or concerning Smart.

40.     Huffman has published these false and defamatory communications concerning Smart, a private person, either knowing that the statements were false and defamatory, or in reckless disregard for whether they were false and defamatory, or with negligence regarding the truth or falsity of the defamatory statements.

41.     Huffman's false and defamatory statements were designed to have, and have had, a natural tendency to injure or cause special damage to Smart, including, without limitation, in his occupation.

42.     As a result of Huffman's conduct, Smart has been damaged in an amount to be proven at trial.

43.     Moreover, because Huffman's publications have brought Smart into disrepute, contempt, and ridicule and have impeached Smart's honesty, integrity, virtue, and reputation, Huffman's publication constitutes defamation *per se*, and Smart is presumptively entitled to general damages.

44.     Huffman has acted with such malice, hatred, and ill will toward Smart, and/or has acted so recklessly with respect to Smart's rights, that an award of punitive damages is appropriate.

**SECOND CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress**

45.     Smart incorporates by reference all prior Paragraphs of this Complaint.

46.     Huffman's publications about Smart on the Website constitute extreme and outrageous conduct that has the intention of causing, or that recklessly disregards the probability of causing, emotional distress to Smart.

47.     Smart, in fact, has suffered severe or extreme emotional distress as a direct and proximate result of Huffman's outrageous conduct.

48.     As a result of Huffman's conduct, Smart has been damaged in an amount to be proven at trial.

49.    Huffman has acted with such malice, hatred, and ill will toward Smart, and/or has acted so recklessly with respect to Smart's rights, that an award of punitive damages is appropriate.

**THIRD CLAIM FOR RELIEF**
**Intrusion On Seclusion**

50.    Smart incorporates by reference all prior Paragraphs of this Complaint.

51.    Smart has, and should have, a reasonable expectation of privacy regarding matters pertaining to his education, marital affairs, finances, and alleged arrest record.

52.    Huffman's publications about Smart intentionally intrude into Smart's private and personal matters in a manner that is, or would be, highly offensive to a reasonable person.

53.    Smart finds Huffman's publications to be highly offensive.

54.    Huffman's Website is intended to be viewed by the public, and was created and is hosted in order to injure, demean, embarrass, and damage Smart personally and in his business throughout the world.

55.    Huffman's motives and objectives are vindictive, motivated by a desire to harm and embarrass, and serve no privileged or legitimate business purpose.

56.    Huffman's conduct has harmed Smart in his business activities and has caused Smart emotional distress.

**WHEREFORE**, Smart prays that judgment be entered against Huffman as follows:

A.    That the Court award Smart his actual damages sustained as a result of Huffman's unlawful conduct, in an amount to be decided at trial but which amount shall exceed $75,000.00, plus pre-judgment and post-judgment interest thereon, at the legal rate, until paid in full;

B.    That the Court award punitive damages to Smart in an amount to be decided at trial.

SQUIRE SANDERS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

COMPLAINT

C.      That the Court award injunctive relief as appropriate, including enjoining Huffman from continuing to host, publish, or republish his defamatory, harassing, and malicious statements about Smart.

D.      That the Court award Smart his reasonable attorneys' fees and expenses accrued and accruing herein, plus post-judgment interest thereon, at the legal rate, from the date judgment is entered until paid in full;

E.      That the Court award Smart his taxable and non-taxable costs accrued and accruing herein, plus post-judgment interest thereon, at the legal rate, from the date judgment is entered until paid in full; and

F.      For such other forms of relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: January 4, 2013.

RESPECTFULLY SUBMITTED,
SQUIRE SANDERS (US), LLP.

By: */s  Stacie D. Yee*
Stacie D. Yee
stacie.yee@squiresanders.com
Attorneys for Plaintiff
DEREK K. SMART